**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00661-RMR-KAS

BENNETTA GREEN, and CODY MANTIA, individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.

PILGRIM'S PRIDE CORPORATION,

      Defendant.

_____

**UNOPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND PRELIMINARY
APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**
_____

Joseph A. Fitapelli
Armando A. Ortiz
**Fitapelli & Schaffer, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
(212) 300-0375 – Telephone
(212) 481-1333 – Facsimile

Melinda Arbuckle
Ricardo J. Prieto
**Wage and Hour Firm**
400 North Saint Paul Street, Suite 700
Dallas, Texas 75201
(214) 210-2100 – Telephone
(469) 299-1070 – Facsimile

ATTORNEYS FOR PLAINTIFFS
AND PUTATIVE COLLECTIVE ACTION MEMBERS

TABLE OF CONTENTS

I.    SUMMARY. .................................................................................................... 1

II.   FACTUAL & PROCEDURAL BACKGROUND. .................................................. 1

   A.   The Lawsuit, Discovery, and Mediation. ....................................................... 1

   B.   The Settlement Agreement. ........................................................................... 4

      1.   Gross Settlement Award, Scope of Settlement Collective, Requested
      Attorneys' Fees, Costs, Administrative Costs, and Service Awards, and Pro-Rata
      Distribution. ....................................................................................................... 4

      2.   Release for Settlement Collective Members Who Participate. ............................. 5

      3.   Proposed Notice Program to Administer the Settlement ....................................... 6

III.  ARGUMENT ..................................................................................................... 7

   A.   Applicable Standard for Certification of this Settlement Collective ......................... 7

   B.   Approval of this FLSA Collective Settlement. ................................................... 9

      1.   There is a bona fide dispute at issue in this case. .................................................. 9

      2.   The settlement is fair and reasonable. .................................................................... 11

         a.   Factor 1 – Discovery Taken. .............................................................................. 11

         b.   Factor 2 – Stage of Proceeding .......................................................................... 12

         c.   Factor 3 – No Fraud or Collusion ....................................................................... 12

         d.   Factor 4 – Experience of Plaintiffs' Counsel ...................................................... 13

         e.   Factor 5 – Potential Range of Recovery ............................................................. 13

      3.   The Settlement does not undermine the FLSA ...................................................... 16

a.    The Presence of Other Similarly-Situated Employees ..................................... 16

b.    The Likelihood that the Plaintiffs' Circumstances Will Recur ......................... 16

c.    Whether the Defendant have a history of non-compliance with the FLSA. .. 17

4.    The Settlement Contemplates a Reasonable Attorneys' Fee Award. ............... 17

a.    Class Counsel Counsel Represented Plaintiffs on a Contingency Basis
(Factor 4, 6 and 11). ................................................................................... 20

b.    Collective Counsel's Requested Fee is Within the Customary Range of
Reasonableness for FLSA Contingency Cases in this Circuit (Factors 5-6, 12). 21

c.    FLSA Misclassification Cases are Inherently Complicated and Plaintiffs'
Counsel is Experienced and Skilled in Handling the Same (Factors 1-4,7, 9-10) 21

d.    The Time and Labor Required was Substantial and Counsel's Requested
Costs are Reasonable (Factor 1). ................................................................. 22

e.    The Settlement Represents a Fair Recovery for Settlement Collective
Members Considering the Significant Risks (Factor 8)......................................... 24

C.    The Requested Service Awards Are Reasonable ................................................. 24

D.    The Requested Claim Administrator Fees Are Reasonable ............................... 25

IV.    CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Angus v. L & M Operations LLC,* No. 19-CV-03032-CMA-NYW,
2020 WL 6273742 (D. Colo. Oct. 26, 2020)......................................................... 11, 15

*Aragon v. Clear Water Products LLC*, No. 15-cv-02821-PAB-STV,
2018 WL 6620724 (D. Colo. Dec. 18, 2018)....................................................... 21, 23

*Avalos v. Papa John's Int'l Inc.*, No. 8:18-cv-00871-DOC-JC, 2020 WL 11563055
(C.D. Cal. Apr. 21, 2020) ............................................................................................ 13

*Baker v. Vail Resorts Mgmt. Co.,* 2014 WL 700096 (D. Colo. Feb. 24, 2014)... 10, 11, 16

*Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ....................................... 22

*Bilinsky v. Gatos Silver, Inc.*, No. 22-cv-00453, 2024 WL 4494290 (D. Colo. Oct. 15,
2024) ............................................................................................................................. 23

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......................................................... 18

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*,
8 F.3d 722 (10th Cir. 1993)........................................................................................ 24

*Brown v. Philips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1998) ........................ 18, 19, 20

*Byrne v. Santa Barbara Hospitality Servs., Inc.*, No. EDCV 17-527 JGB (KKX),
2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) ............................................................. 13

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
888 F.3d 455 (10th Cir. 2017)..................................................................................... 24

*Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127 (D. Colo. Dec. 20,
2011) ............................................................................................................................... 8

*Davis v. Crilly*, 292 F. Supp. 3d 1167 (D. Colo. 2018)................................................. 15

*Faulkner v. Ensign United States Drilling Inc.*, No. 16-CV-03137-PAB-KLM,
2020 WL 550592 (D. Colo. Feb. 4, 2020) .................................................................. 19

*Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300 (10th Cir. 2014)....................................... 17

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994)............................................................ 17

*Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE),
    2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ........................................................... 20

*Heitzman v. Calvert's Express Auto Serv. & Tire, LLC*,
    No. 22-CV-2001-JAR-ADM, 2023 WL 2117805 (D. Kan. Feb. 17, 2023) ................. 19

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................. 18

*Herring v. Thunder Ridge Trucking & Filtration, Inc.*,
    No. 15-cv-00062-RM-KLM, 2016 WL 7868819  (D. Colo. May 24, 2016) .............. 9, 16

*Jackson v. U.S. Bancorp*, No. 20-2310-EFM, 2022 WL 744693
    (D. Kan. Mar. 11, 2022) ......................................................................................... 19

*Lopez v. El Mirador, Inc.*, No. CV 16-01257 RB-KBM, 2018 WL 582577
    (D.N.M. Jan. 26, 2018) ........................................................................................... 12

*Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx),
    2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............................................................ 15

*Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150 (LJL), 2024 WL 2801922
    (S.D.N.Y. May 31, 2024) ......................................................................................... 13

*Marquez v. Midwest Div. MMC, LLC*, No. 19-2362-DDC-ADM,
    2022 WL 17093036 (D. Kan. Nov. 21, 2022) .......................................................... 23

*Miles v. BKP Inc.*, No. 18-CV-01212-PAB-MEH, 2024 WL 2724007
    (D. Colo. May 28, 2024) ......................................................................................... 19

*Mishkin v. Zynex*, No. 09-cv-00780-REB-KLM, 2012 WL 406925
    (D. Colo. Sept. 2012) ............................................................................................. 23

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.1982) ....................... 15

*Olivo v. Crawford Chevrolet Inc.,* 526 Fed. App'x 852 (10th Cir. 2013) ....................... 17

*Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117 (D. Colo. 2016) ........ 7, 9

*Price v. Devon Energy Corp.*, No. 2:20-cv-00316-KWR-GJF,
    2021 WL 2312537 (D.N.M. May 24, 2021) ............................................................. 19

*Ramirez et al. v. El Tapatio, Inc. et al.,* Case No. 13-cv-00861-REB-BNB,
    Doc. No. 58 (D. Colo. 2013) .................................................................................... 25

*Rodriguez v. 5830 Rest. Corp.*, No. 21-CV-01166-KLM, 2023 WL 1507195

(D. Colo. Feb. 3, 2023) ....................................................................... 19, 20

*Rothe v. Battelle Mem'l Inst.*, No. 1:18-CV-03179-RBJ, 2021 WL 2588873
(D. Colo. June 24, 2021)............................................................................ 23

*Shaw v. Interthinx, Inc.*, 13-cv-01229-REB-NYW, 2015 WL 1867861
(D. Colo. Apr. 22, 2015)....................................................................... 17, 23

*Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*,
No. 1:22-CV-01176-RM-SBP, 2024 WL 1743497 (D. Colo. Apr. 23, 2024)........passim

*Swanson v. Cathedral Energy Servs., Inc.*, No. 17-CV-01578-DDD,
2019 WL 4858453 (D. Colo. Oct. 2, 2019)................................................... 19

*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001)....................... 7, 8

*Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672 (D. Colo. 1997)................................. 8

*Warren v. MBI Energy Servs., Inc.,* No. 1:19-CV-00800-RM-STV,
2020 WL 5640617 (D. Colo. Sept. 22, 2020)........................................... 8, 13

*Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972
(D. Colo. Nov. 13, 2013) ....................................................... 11, 19, 20, 22

**STATUTES**

29 U.S.C. § 216(b) ................................................................................. 5, 7, 17

I. **SUMMARY.**

Plaintiffs, Bennetta Green and Cody Mantia, brought this lawsuit on behalf of themselves and similarly situated workers at Pilgrim's Pride Corporation's meat-processing facilities seeking owed overtime. After 15 months of litigation, a full-day mediation with an experienced mediator, and many months of post-mediation negotiations, Plaintiffs respectfully request that the Court preliminary approve the settlement agreement and conditionally certify the collective of similarly situated individuals so they may consent to join this settlement.

II. **FACTUAL & PROCEDURAL BACKGROUND.**

A. **The Lawsuit, Discovery, and Mediation.**

Bennetta Green filed her original lawsuit on March 14, 2023, an Amended Complaint on April 24, 2023, and a Second Amended Complaint ("SAC") on December 16, 2024. Dkt. Nos. 1, 19, 60, 67. Green's original complaint brought claims for owed overtime for herself and other salaried Superintendents at Pilgrims' poultry production facilities. Dkt. No. 19 ¶ 2. Specifically, Green alleged that she and other Production Superintendents were misclassified as exempt employees, despite having primarily non-exempt job duties such as working on the line and packaging meat products, the same as hourly-paid employees on the production line. *Id.* ¶¶ 24, 26-27, 29. Cody Mantia, who also worked as a Superintendent, joined the case as an opt-in plaintiff on March 14, 2023. Dkt. No. 2, and became a named plaintiff in the SAC. Dkt. No. 60-1; 67. Defendant at all times denied liability in respect to Green, Mantia, and other Superintendents and denied the basis for the proposed collective action. *See* Pilgrim's Answer, Dkt. No. 23.

1

The Parties held an initial scheduling conference before Magistrate Judge Mix on July 5, 2023. The Parties agreed to bifurcate discovery, focusing on Phase I conditional certification discovery to be completed by December 5, 2023. *See* Scheduling Order, Dkt. No. 36. The Parties participated in significant written discovery, both serving interrogatories and written requests for the production of documents. (Movant's Appx., p. 26-27 – Declaration of Armando Ortiz ("Ortiz Decl.") ¶ 8-9). Defendant produced over 2,500 pages of discovery, ranging from PDF and native payroll records to discipline forms, and internal emails. (Movant's Appx., p. 27 – Ortiz Decl. ¶ 10). In addition, Defendant produced full payroll records and data for Production Superintendents at Elberton, GA as part of discovery. *Id.* During discovery, it was confirmed that Mantia participated in the Supervisor Development Program ("SDP"), which is a Pilgrim's internal advancement program that trains individuals for promotion from hourly to salaried positions and other employees who were hired into supervisory positions at Pilgrim's. *Id.* ¶ 11. Based on interviews with Mr. Mantia and the records provided, Plaintiffs' Counsel believed SDP participants were also likely misclassified from overtime under the FLSA. Based on information and documents in Mantia's possession, the SDP training program involved individuals who worked at facilities other than just Elberton, GA, the facility where Green and Mantia worked. *Id.*

On January 24, 2024, the Parties filed a status report that after Phase I certification discovery, they had stipulated to conditional certification of a collective action at the Elberton, GA facility (where the Plaintiffs worked) without the need of a disputed motion.

Dkt. No. 44. On April 15, 2024, the Parties requested a stay of the case so that the Parties could participate in a mediation. Dkt. No. 50.

The Parties prepared extensively for mediation before D. Charles Stohler, an experienced and well-respected FLSA mediator. (Movant's Appx., p. 27 – Ortiz Decl. ¶ 14). Prior to mediation, Plaintiffs utilized the formal discovery received to create a damages model encompassing all Production Superintendents at the Elberton, GA facility in the relevant time period. *Id.* Pilgrims also produced sufficient informal discovery to determine the number of individuals like Mantia who participated in Pilgrim's Superintendent Development Program ("SDP") and their time in the program. *Id.* At mediation, the Parties discussed two types of workers: 1) salaried production superintendents at the Elberton, GA facility and 2) salaried production and maintenance employees who participated in the SDP Program nationwide. *Id.* ¶ 14-15.

The Parties participated in the all-day mediation with Mr. Stohler on July 23, 2024. (Movant's Appx., p. 28 – Ortiz Decl. ¶ 16). Although no settlement was reached after the mediation session, Mr. Stohler provided the Parties with a mediator's proposal, with a response date of July 25, 2024. *Id.* The Parties accepted the mediator's proposal on July 25, 2024. *Id.* Over the next several months, the Parties negotiated the terms of the memorandum of understanding and long form settlement agreement. *Id.* ¶ 18.

**B. The Settlement Agreement**

    **1. Gross Settlement Award, Scope of Settlement Collective, Requested Attorneys' Fees, Costs, Administrative Costs, and Service Awards, and Pro-Rata Distribution.**

The proposed settlement obligates Pilgrims to pay up to a maximum settlement amount of $692,746.67 ("Gross Settlement Amount" or "GSA"). (Movant's Appx., p. 2 – Settlement Agreement ¶ 1(n)). The Settlement Agreement covers two types of workers – Production Superintendents who worked at the Elberton, GA facility since March 14, 2020 ("the Elberton Collective") and current and former production and maintenance employees working at any of Pilgrim's locations in the United States who participated in Pilgrim's Superintendent Development Program since March 14, 2020 ("SDP Collective"). (Movant's Appx., p. 4 – Settlement Agreement ("Agreement") ¶ 1(y). Together, members of the Elberton Collective and SDP Collective are "Settlement Collective Members." *Id.*

Before final approval, Plaintiffs' Counsel will apply to the Court for an attorneys' fees award of 40% of the GSA ($277,098.67), out-of-pocket costs not to exceed $15,000.00, Claim Administrator costs estimated to be $21,500.00, and service payments of $10,000.00 each to Green and Mantia. (Movant's Appx., p. 19 – Agreement A-2). If these applications are approved, this results in a Net Settlement Amount ("NSA") of 360,648.00 that will be divided pro-rata based on the formula set forth in the Settlement Agreement. (Movant's Appx., p. 10 – Agreement ¶ 30). Pilgrim's share of payroll taxes is outside the settlement fund. *Id.* ¶ 28. Participating Collective Members' individual settlement amounts will be treated as 50% W2 wages and 50% 1099 payment. (Movant's Appx., p. 11 – Agreement *Id.* ¶ 36). Any amounts of requested attorneys' fees, costs, and

service awards not given final approval will be redistributed to participating Claimant on a pro-rata basis. (Movant's Appx., p. 9 - Agreement ¶ 24).

The pro-rata formula is based upon the number of qualifying days a Settlement Collective Member worked in a covered position in the relevant time period. (Movant's Appx., p. 10 – Agreement ¶ 30). For purposes of this formula, SDP Collective Members receive credit of 120 days, which is generally the length of time they were in the 4-month SDP Training Program. *Id.* For members of the Elberton Collective, the number of qualifying days is equal to their length of employment in the Production Superintendent position since March 14, 2020. *Id.* Individuals who have eligibility under both positions will accumulate qualifying days from each employment period. *Id.*

### 2.  Release for Settlement Collective Members Who Participate.

Because the settlement follows the opt-in structure of the FLSA, only putative collective members who timely return executed settlement Claim Form and Releases ("Claim Form") (attached to the Proposed Notice) will be eligible to receive a settlement payment. 29 U.S.C. § 216(b). In this same vein, putative Collective Members who do not return a Claim Form **do not** release Pilgrim's of any of their claims and do not receive payment. Thus, this settlement **does not** bind non-participating individuals, unlike traditional class action settlements under Fed. R. Civ. P. 23.

The release for participating Collective Members releases all individual and collective action claims and damages alleged in the Complaint, including, but not limited to, claims and damages arising under the FLSA, state or local law, or common law, related to claims of unpaid overtime wages in the Relevant Time Period. (Movant's Appx., p. 3 –

Agreement ¶ 1(u)). The Relevant Time Period is different for the two collectives. Participating Elberton Collective Members shall release all such claims from March 14, 2020 through the date of final approval. *Id.* ¶ 1(v). Participating SDP Collective Members only give this release for the period of time they participated in the SDP. *Id.* Thus, SDP Collective Members are being compensated for the time in the SDP, and are only releasing claims for that specific time frame. *Id.* Participating Collective Members will have 120 days from the date of mailing to cash or deposit their settlement checks. (Movant's Appx., p. 12 – Agreement ¶ 37).

### 3. Proposed Notice Program to Administer the Settlement

Should the Court preliminarily approve the Parties' Agreement, Plaintiffs further ask the Court to approve the mailing of the Parties' proposed Notice of Settlement & Claim Form and Release. (Movant's Appx., p. 18-24 – Agreement A1-A5). The proposed notice explains in detail the settlement of the lawsuit, why they are receiving the Notice, their estimated pro rata settlement amounts and how the amounts were calculated, what the lawsuit is about, what their options are, the effect of participating or not participating in the settlement, their rights under the FLSA, the scope of the release, the steps they must take to participate in the settlement, and what to do if they have further questions. *Id.*

Settlement Collective Members will have 60 days from the date of mailing to return a claim form, do nothing, or object to the settlement. (Movant's Appx., p. 3 – Agreement ¶ 1(q)) Prior to the mailing of the Notice, the Claims Administrator will update the addresses provided by Pilgrims using the National Change of Address database or other equivalent resources to ensure the most accurate mailing address possible. (Movant's

Appx., p. 7 – Agreement ¶ 23(c)). Likewise, for any Notices returned as undeliverable, the Claims Administrator will remail the Notice to any forwarding addresses provided by USPS and skip tracing if necessary. *Id.* ¶ 23(e). Should the Court grant final approval, settlement checks will be prepared and distributed by the Claims Administrator approximately 70 days from the Court's final approval order. Movant's Appx., p. 11 – Agreement ¶ 35-36).

## III.  ARGUMENT

### A.  <u>Applicable Standard for Certification of this Settlement Collective</u>

"Section 216(b) of the FLSA provides that an action under the FLSA for overtime violations 'may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.'" *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 1:22-CV-01176-RM-SBP, 2024 WL 1743497, at *10 (D. Colo. Apr. 23, 2024) (citing 29 U.S.C. § 216(b)). The Tenth Circuit has approved the two-step process for certification of collective actions to determine whether putative collective members are similarly situated to the named plaintiffs. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-1105 (10th Cir. 2001).

To obtain certification of a settlement collective, the Parties must demonstrate only that collective certification is appropriate under the same standards applied to a motion for conditional certification of a proposed collective action under the FLSA. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 127–28 (D. Colo. 2016); *Stanley*, 2024 WL 1743497, at *10. For conditional certification at the notice stage, "the Tenth Circuit requires nothing more than substantial allegations that the putative class members

7

were together the victims of a single decision, policy, or plan." *Stanley*, 2024 WL 1743497, at *10 (citing *Thiessen*, 267 F.3d at 1102; *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). Said differently, there only needs to be a "reasonable basis" for the court to conclude that the proposed class includes other similarly situated employees. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. Dec. 20, 2011) (internal citation omitted). This is a "lenient standard," which "typically results in conditional certification of a representative class." *Warren v. MBI Energy Servs., Inc.,* No. 1:19-CV-00800-RM-STV, 2020 WL 5640617, at *1 (D. Colo. Sept. 22, 2020).

Here, the Parties have presented sufficient information for the Court to certify the Settlement Collective. Plaintiffs have alleged that Plaintiffs and Settlement Collective Members are similarly situated in that they were uniformly classified as exempt despite having primarily non-exempt job duties. See SAC ¶¶ 27-33. They have alleged FLSA violation in that they worked over 40 hours in a week generally, and did not receive overtime. SAC ¶¶ 34. Pilgrim's operative Answer admits that Plaintiff and the proposed collective were classified as exempt from overtime. Ds Answer, Dkt. No. 23 ¶¶ 25, 31, Affirm. Def. No. 19. Moreover, for the purposes of this motion only, Pilgrims does not oppose conditional certification of the Settlement Collective. As a result, the Court should conditionally certify the Settlement Collective under § 216(b) of the FLSA for the purposes of effectuating this settlement because this lenient burden has been met and substantial allegations of the unifying FLSA policy and practice is met. *See Stanley*, 2024 WL

1743497, at * 10 (granting conditional certification of the settlement collective in part "given the parties' stipulation and joint motion").

B. **Approval of this FLSA Collective Settlement.**

When reviewing an FLSA collective action settlement, courts "scrutinize the settlement for fairness" and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Pliego*, 313 F.R.D. at 127–28. "If the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.* As recently outlined by Judge Prose, the four considerations are whether: "(1) the FLSA settlement is reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees." *Stanley*, 2024 WL 1743497, at *10 (citing *Herring v. Thunder Ridge Trucking & Filtration, Inc.*, No. 15-cv-00062-RM-KLM, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016)). Regarding the second factor, courts generally first evaluate "whether the settlement is fair and reasonable and, second, whether the settlement undermines the purposes of the FLSA." *Herring*, 2016 WL 7868819, at *2. In considering whether the FLSA has been undermined, courts look at 1) the presence of other similarly situated employees, 2) the likelihood that the plaintiff's circumstances will recur, and 3) whether the defendant has a history of non-compliance with the FLSA." *Id.* at *2.

1. **There is a bona fide dispute at issue in this case.**

Parties seeking approval of an FLSA settlement may establish that a bona fide dispute exists by presenting: "(1) a description of the nature of the dispute; (2) a

9

description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker v. Vail Resorts Mgmt. Co.,* 2014 WL 700096, *1 (D. Colo. Feb. 24, 2014).

Here, as to *Baker* factor (1), the Parties dispute whether or not Plaintiffs and Settlement Collective Members were properly classified as "exempt" under the FLSA. This is a significant dispute because if Plaintiffs are properly exempt, they are owed absolutely nothing extra for overtime pay. Additionally, the Parties disputed the proper measure of calculating damages. Additionally, the Parties greatly disputed the weekly number of hours worked. As such, there are several lawyers of fundamental disagreements as to the merits of the case, as opposed to certain wage and hour cases where, for instance, only the measure of damages are at issue.

As to *Baker* factor (2), Pilgrims operate poultry processing facilities. The settling Plaintiffs are Pilgrim's salaried Production Superintendents at the Elberton, GA facility and salaried production and maintenance employees who participated in Pilgrim's SDP program. The settling Plaintiffs work in these poultry production facilities.

As to *Baker* factor (3), Pilgrim's position is that Settlement Collective Members were properly classified as exempt under the FLSA. As to *Baker* factor (4), Plaintiffs' position is that their performance of non-exempt production line work, along with shadowing while in the SDP program, supports their claim that they should have been

classified as non-exempt and eligible for overtime pay.

*Baker* factor (5), the parties based their settlement discussions on an in-depth review of Pilgrims' payroll records. The Parties dispute the number of hours Plaintiffs worked on a weekly basis, along with the method of calculating overtime damages in a misclassification case. In light of all of the above, the Parties disagree as to the merits and "this case is not sham litigation … it very much involves a bona fide dispute between adversarial opponents." *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013).

### 2. The settlement is fair and reasonable.

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA's policy rationales. *Angus v. L & M Operations LLC,* No. 19-CV-03032-CMA-NYW, 2020 WL 6273742, at *2 (D. Colo. Oct. 26, 2020) (citing *Baker*, 2014 WL 700096, at *2).

When determining whether a settlement is fair and reasonable, courts weigh a number of factors, including:

> (1)    the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiff's success on the merits and (6) the amount of the settlement in relation to the potential recovery.

*Id*. There is a strong presumption in favor of finding a settlement fair. *Id.*

### a.  Factor 1 – Discovery Taken

As to factor one (1), extensive discovery into this matter took place to allow the

Parties to carefully weigh the pros and cons of protracted litigation. Specifically, Defendant produced thousands of pages of relevant payroll and other employment records for Plaintiffs and Settlement Collective Members. As part of the mediation process, Defendant also produced sufficient information for Counsel to create a damages model encompassing the SDP Collective's potential recovery. Thus, sufficient discovery has taken place for both sides to negotiate fairly. *See Lopez v. El Mirador, Inc.*, No. CV 16-01257 RB-KBM, 2018 WL 582577, at *6 (D.N.M. Jan. 26, 2018) (finding settlement fair where both formal and informal exchange of information occurred).

### b.  Factor 2 – Stage of Proceeding

As to factor two (2), the stage of the proceedings supports a finding of fairness. Here, the Parties engaged in mediation only after the end of Phase I discovery, approximately a year and a half after the filing of the lawsuit. The time to mediate the case was then, so as to avoid the further complexity and expense that dealt with conditional certification of the Elberton, GA collective, the inclusion of the SDP Collective and briefings as to that collective, and formal merits-based discovery as to Plaintiffs and opt-in Plaintiffs. Thus, this factor supports approval.

### c.  Factor 3 – No Fraud or Collusion

As to factor three (3), there is no fraud or collusion in the settlement. This settlement is the result of an arms-length negotiation facilitated by a well-respected and highly experienced employment mediator. This fact, along with the fact that mediation occurred after significant discovery has taken place, along with months of negotiations of the fine print, supports the finding that there is no fraud or collusion. *See, e.g.*, *Stanley*, 2024 WL 1743497, at *7 ("The assistance of an experienced mediator in the settlement

process confirms that the settlement is non-collusive.").

### d.  Factor 4 – Experience of Plaintiffs' Counsel

As to factor four (4), Plaintiffs' Counsel is highly experienced in wage and hour collective actions like this one. See Movant's Appx., p. 32 – Ortiz Decl. ¶ 34; p. 41-44 – Declaration of Ricardo Prieto ("Prieto Decl.") ¶¶ 4-12. In this regard, both law firms selected by Plaintiffs have successfully served as class counsel in numerous class and collective wage and hour matters around the country, including in this District. *See, e.g.*, *Warren*, 2020 WL 5640617, at *1; *Mangahas v. Eight Oranges In*c., No. 22-CV-4150 (LJL), 2024 WL 2801922, at *13 (S.D.N.Y. May 31, 2024) (appointing Fitapelli & Schaffer, LLP as class counsel having "extensive experience as class and collective counsel in federal cases"); *Avalos v. Papa John's Int'l Inc.*, No. 8:18-cv-00871-DOC-JC, 2020 WL 11563055 (C.D. Cal. Apr. 21, 2020) (approving WHF as class counsel); *Byrne v. Santa Barbara Hospitality Servs., Inc.*, No. EDCV 17-527 JGB (KKX), 2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) (same). This weighs in favor of approval.

### e.  Factor 5 – Potential Range of Recovery

There is no question the value of the Settlement Agreement represents fair value for Settlement Collective Members. Numerous workers will receive back wages and penalty damages under federal law without the risk or expense of protracted litigation and trial. This is particular significant given the Parties' fundamental disagreements as to the merits of Plaintiffs' claims, and the possibility that Settlement Collective Members could be found to have been properly exempt from overtime and owed zero dollars. In other words, this was not a wage and hour case where liability is all but assured and the only question is damages, such as for instance a straight time for overtime case. Here,

the question of whether Plaintiffs' primary job duties properly fell into the executive or administrative exemption is heavily disputed by the Parties. Each Settlement Collective Member who elects to participate in the settlement will be able to recover a specified amount calculated based on their specific employment history with Pilgrims in the applicable time period.

If approved, Pilgrims will pay up to $692,746.67 to resolve the claims of Plaintiffs and the Settlement Collective Members who timely execute a Claim Form. The Parties estimate that there are approximately 633 Settlement Collective Members. (Movant's Appx., p. 30 – Ortiz Decl. ¶ 26). Given this case is contingent upon several factors, the range of recovery is as follows:

| Daily Hours Worked (heavily disputed) | Total Base Wages (including third year) | Percentage Recovered by Settlement |
|---|---|---|
| 8 | $641,151.60 | 108% |
| 9 | $1,400,132.74 | 49.5% |
| 10 | $2,010,360.13 | 34.5% |
| 11 | $2,511,628.12 | 27.6% |
| 12 | $2,929,359.61 | 23.6% |

*Id.* ¶ 24. In undersigned counsel's professional opinion, the settlement provides a very fair value of recovery when considering the disputed issues at hand, including discovery produced that could support an argument that these workers performed "exempt" work.

14

*Id.* Thus, the money recovered is a fair value of recovery when considering the significant issues at hand with regards to liability, damages, and "the risk, expense, and heartache that comes with protracted litigation and trial." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018); *Angus*, 2020 WL 6273742, at *2 ("this Court attributes significant weight to counsel's professional judgment that this agreement represents a fair and reasonable settlement of this dispute"); *see also Ma v. Covidien Holding, Inc*., No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (where court found a settlement providing 9.1% of the total value of the action was "within the range of reasonableness."); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982) (noting it is not the Court's role to second guess the terms of the Parties' negotiated settlement agreement).

To be clear, if a Settlement Collective Member is not happy with their settlement share, they simply do not return the Claim Form and they do not give a release. In other words, Settlement Collective Members decide, having full knowledge of their estimated share, whether to accept or reject the fair settlement proposal.

Should the Court not approve the Parties' settlement, additional expensive and time-consuming formal Phase II discovery will occur, and additional litigation would be necessary as to merits, decertification, willfulness, and whether Pilgrims can demonstrate the good faith affirmative defense. Both Parties maintain their factual and legal positions are viable and they intend to vigorously litigate their positions in the absence of a settlement. The Parties' settlement, therefore, avoids potentially costly

litigation spanning additional months (and likely years) and the Settlement Collective Members clearly benefit from the surety of recovery under this agreement.

### 3.  The Settlement does not undermine the FLSA

To find that an FLSA settlement does not undermine the Act, courts review whether the proposed settlement adheres to the statute's purpose, which is to protect employees' rights from employers who generally wield superior bargaining power. *Baker*, 2014 WL 700096, *2. To make this determination, courts examine (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA. *Herring*, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

#### a.  <u>The Presence of Other Similarly-Situated Employees</u>

This settlement brings together all similarly situated Superintendent at Elberton, GA and also all production and maintenance employees who participated in the SDP Program nationwide. Thus, by including and recovering damages for these similarly-situated employees, this lawsuit countered the bargaining power advantage normally enjoyed by employers like Pilgrims. This settlement thus effectuates rather than undermines the purpose of the FLSA.

#### b.  <u>The Likelihood that the Plaintiffs' Circumstances Will Recur</u>

Plaintiffs believe that Pilgrims has a strong incentive to review their employee classifications to ensure compliance with the FLSA. Thus, the likelihood of

misclassification of these positions should be lowered given the attention to these issues raised by this lawsuit. This falls squarely within the rationale of the FLSA.

### c. __Whether the Defendant have a history of non-compliance with the FLSA.__

As a nation-wide corporation with thousands of employees across the country, Pilgrims has been sued previously for wage and hour violations. However, this matter is the first case that dealt specifically with the Production Superintendent and SDP program participation. Thus, this factor is neutral and should not prevent approval.

### 4. The Settlement Contemplates a Reasonable Attorneys' Fee Award.

To approve the Settlement Agreement, this Court must be satisfied that the award of attorneys' fees and costs is reasonable. *See, e.g.*, *Stanley*, 2024 WL 1743497, at *12. The FLSA provides that the Court "shall . . . allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014). Although the fee is mandatory, the Court has discretion to determine the reasonableness of the amount requested. *See Olivo v. Crawford Chevrolet Inc.,* 526 Fed. App'x 852, 855 (10th Cir. 2013).

"In wage and hour class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund." *See, e.g.*, *Stanley*, 2024 WL 1743497, at * 5 (citing *Shaw v. Interthinx, Inc.*, 13-cv-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015)); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less

subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Philips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998). This principle makes sense because it is counsel's efforts that result in the creation of a common fund that benefits plaintiffs and unnamed class members, and thus, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund [...] is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine ensures payment for work performed by class counsel, avoiding the alternative of unjust enrichment of absent class members who benefit from the fund without an express retainer agreement. *Id.* An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Pilgrims does not object to an award of attorneys' fees and costs. Plaintiffs seek approval of 40% of the Gross Settlement Fund as attorneys' fees, which is $277,098.67 in attorneys' fees, and out-of-pocket costs not to exceed $15,000.00,[1] totaling $292,098.67. This rate is well within the "ordinary 20% - 50% range" of contingency percentages. *See Swanson v. Cathedral Energy Servs., Inc.,* No. 17-CV-01578-DDD,

---

[1] Considering the case is not over at this point, the cost estimate is slightly higher than Counsel's current expenses of $14,401.07 to contemplate further expenses. Any costs not claimed would be allocated to the Net Settlement Fund for disbursement to Settlement Collective Members.

2019 WL 4858453, at *3 (D. Colo. Oct. 2, 2019); *see also Rodriguez v. 5830 Rest. Corp*., No. 21-CV-01166-KLM, 2023 WL 1507195, at *10 (D. Colo. Feb. 3, 2023) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis,")

Indeed, this rate is consistent with the rates typically approved by district courts with respect to settled FLSA actions in the Tenth Circuit. *See, e.g., Miles v. BKP Inc*., No. 18-CV-01212-PAB-MEH, 2024 WL 2724007, at *4 (D. Colo. May 28, 2024) (approving 38% contingency); *Heitzman v. Calvert's Express Auto Serv. & Tire, LLC*, No. 22-CV-2001-JAR-ADM, 2023 WL 2117805, at *5 (D. Kan. Feb. 17, 2023) (approving 40% contingency); *Jackson v. U.S. Bancorp*, No. 20-2310-EFM, 2022 WL 744693, at *4 (D. Kan. Mar. 11, 2022) (approving an award of 40% of a gross settlement amount); *Price v. Devon Energy Corp*., No. 2:20-cv-00316-KWR-GJF, 2021 WL 2312537, at *1 (D.N.M. May 24, 2021) (approving attorney's fees at the rate of 40%); *Faulkner v. Ensign United States Drilling Inc*., No. 16-CV-03137-PAB-KLM, 2020 WL 550592, at *5 (D. Colo. Feb. 4, 2020) (noting that 40% contingency retainer where "counsel runs a significant risk of nonpayment weights in favor of the reasonableness of a requested fee award"); *Swanson*, 2019 WL 4858453, at *3 (approving 36% contingency); *Whittington*, 2013 WL 6022972, at *6 (approving 39% of common fund);

To confirm the reasonableness of such a requested fee, the Tenth Circuit directs a review of the twelve *Johnson* factors. *Brown*, 838 F.2d at 454. The *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorney, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."

*Brown*, 838 F.2d at 454-55. Rarely are all *Johnson* factors applicable. *Whittington*, 2013 WL 6022972, at *5.

### a. Class Counsel Counsel Represented Plaintiffs on a Contingency Basis (Factor 4, 6 and 11).

At all times in this case, Counsel has represented Plaintiffs and the putative collective on a 40% contingency basis, and with an agreement to front all necessary out-of-pocket expenses. (Movant's Appx., p. 35 – Ortiz Decl. ¶ 38). Thus, when F&S and WHF take cases like this on, there is no guarantee of any kind relating to attorneys' fees or the repayment of out-of-pocket expenses. Nearly all of Plaintiffs' Counsel are contingency work representing workers around the country as opposed to hourly representation. Movant's Appx. p. 35-36, Ortiz Decl. ¶ 40-41; p. 45 – Prieto Decl. ¶ 20. As courts in this District have noted, attorneys handling such large classes on a contingency basis do not benefit from hourly representation that carries much less risk. *Whittington*, 2023 WL 6022972, at *6; *see also Rodriguez*, 2023 WL 1507195, at *10 (noting "the inherent preclusion of other work implicit in acceptance of a large and complex class action for low-wage workers"); *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE), 2015 WL 5577713, at *16 (S.D.N.Y. Sept. 22, 2015) (noting that

contingency counsel "retained its obligations to pay salaries and overhead, and assuredly forewent other potential clients and cases. A law firm is a business, too" when granting the requested fee award). As set forth below, Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making the relatively undesirable. *See Aragon v. Clear Water Products LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724 at *6 (D. Colo. Dec. 18, 2018). Thus, these factors weigh in favor of the requested fee award.

### b. Collective Counsel's Requested Fee is Within the Customary Range of Reasonableness for FLSA Contingency Cases in this Circuit (Factors 5-6, 12).

As discussed in section III(B)(4), the sought fee is within the customary range of reasonableness for FLSA contingency cases in this Circuit. Thus, this factor also favors approval of the fee award.

### c. FLSA Misclassification Cases are Inherently Complicated and Plaintiffs' Counsel is Experienced and Skilled in Handling the Same (Factors 1-4,7, 9-10)

Misclassification cases are governed by highly technical and specialized wage statutes and regulations. The fundamental question in this case was 1) what were Plaintiffs' primarily job duties; and 2) did these primary job duties fall into one of the many white-collar exemptions to overtime?  Moreover, the second consideration is how exactly to certify this matter as a collective action, and defeat decertification. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of the applicable caselaw and regulations, but also, insight on how to litigation these questions on a class basis. Thus, this case is anything but straightforward. *See*

*Whittington*, 2013 WL 6022972 at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming."). In addition to the number of Putative Class Members, resolving the procedural issues, the merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972 at *6.

Plaintiffs are represented by highly skilled and experienced counsel with significant experience in handling FLSA collective actions like this one. (Movant's Appx., p. 32 – Ortiz Decl. ¶ 34-37; p. 43 – Prieto Decl. ¶ 8-12). FLSA class and collective actions are the primary focus of Counsel's docket. *Id.* Thus, this favors approval of the requested fee.

### d.  The Time and Labor Required was Substantial and Counsel's Requested Costs are Reasonable (Factor 1).[2]

This case has been ongoing for 21 months. If and when final approval is obtained, Counsel and their staff will have spent more than 170 hours investigating, litigating, and bringing this case to a successful settlement and resolutions. (Movant's Appx., p. 36 – Ortiz Decl. ¶ 42; p. 46 – Prieto Decl. ¶ 21). Moreover, Plaintiffs' Counsel anticipates spending additional time in the future preparing for the Fairness Hearing and administering the settlement, and the requested fee award is also meant to compensate for that time. Applying a rate of $450-675 per hour for attorneys Joseph A. Fitapelli, Armando Ortiz, Ricardo Prieto, and Melinda Arbuckle, $200 for Katherine Bonilla, and between $125 to $150 per hour for experienced legal assistants, which are consistent

---

[2] Pilgrims does not oppose this request and takes no position as to the reasonableness of Plaintiffs' Counsels' attorneys' fees and costs.

with rates in Colorado, yields a current attorneys' fee lodestar of $80,802.50. (Movant's Appx. p. 36 – Ortiz Decl. ¶ 42; p. 46 – Prieto Decl. ¶ 21). *See Aragon*, 2018 WL 6620724 at *7 (finding a $600 hourly rate in an FLSA case consistent with rates in this District); *Shaw*, 2015 WL 1867861 at *8 (approving hourly rates ranging from $150 to $675 per hour in collective action).

A lodestar cross-check also supports the reasonableness of the sought award. Plaintiffs' Counsel's attorney fee award of $277,098.67 (40% of the gross settlement amount) represents a lodestar multiplier of 3.43, which is well within the range of lodestar multipliers approved in this District. *Rothe v. Battelle Mem'l Inst.*, No. 1:18-CV-03179-RBJ, 2021 WL 2588873, at *11 (D. Colo. June 24, 2021) (approving 3.61 multiplier); *Bilinsky v. Gatos Silver, Inc.*, No. 22-cv-00453, 2024 WL 4494290, at *7 n. 4 (D. Colo. Oct. 15, 2024) (3.17 multiplier); *Mishkin v. Zynex*, No. 09-cv-00780-REB-KLM, 2012 WL 406925, at *2 (D. Colo. Sept. 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6); *see also Marquez v. Midwest Div. MMC, LLC*, No. 19-2362-DDC-ADM, 2022 WL 17093036, at *6 (D. Kan. Nov. 21, 2022) (noting that multipliers of 2 and 3 "are well within the range accepted by other courts, even in cases without trials"). As such, the lodestar cross-check weighs in favor of the reasonable of the award.

Additionally, Plaintiffs' Counsel has expended $14,401.07 in unreimbursed out-of-pocket costs to date. (Movant's Appx., p. 39 – Ortiz Decl. ¶ 42; p. 46 - Prieto Decl. ¶ 25). Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle*

*Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, counsel's expenses included costs such as filing fees, postage, FedEx costs, travel expenses, and mediation fees.

> ### e. The Settlement Represents a Fair Recovery for Settlement Collective Members Considering the Significant Risks (Factor 8).

The settlement represents a significant recovery on behalf of the proposed Settlement Collective as outlined in section III(B)(2)(e) *supra*, especially given that collective action certification had not ben granted or agreed to with regards to the SDP Collective. Here, all Settlement Collective Members will have an opportunity to participate in the settlement if they desire. Further, the fact that the SDP Collective is giving a release limited only to the weeks in which they were enrolled in the SDP Collective demonstrates the good value the settlement provides for them.

### C. The Requested Service Awards Are Reasonable

Representative plaintiffs are eligible for reasonable incentive payments as part of class action settlements. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."). Here, Bennetta Green and Cody Mantia took a substantial risk in coming forward with reports of Pilgrim's alleged wage and hour violations when no other employees were willing to do so. These plaintiffs assisted counsel in responding to discovery, being available for several telephone interviews and follow up calls about case status and updates, provided documents in their possession, and overall commented on

the terms of the proposed settlement. While neither were compelled to sit for their depositions, they nonetheless advocated greatly for the interest of Settlement Collective Members throughout the litigation. Thus, these modest incentive awards are reasonable. *Stanely*, 2024 WL 1743497, at *10 (approving $10,000 service award); *Ramirez et al. v. El Tapatio, Inc. et al.,* Case No. 13-cv-00861-REB-BNB, Doc. No. 58 (D. Colo. 2013) (approving $10,000.00 incentive award to class representative in wage class action).

### D.  The Requested Claim Administrator Fees Are Reasonable

The Settlement Agreement contemplate retaining an independent Class Administrator responsible for receiving Settlement Collective Member data, running the calculations, and otherwise facilitating the notice process. (Movant's Appx., p. 4 – Agreement ¶ 1(z). Here, the Parties have agreed to use Rust Consulting, an independent and neutral third party administrator company. (Movant's Appx., p. 32– Ortiz Decl. ¶ 32-33); p. 49-54 – Rust CV. The estimated Claims Administrator cost is $21,500.00. (Movant's Appx., p. 32 – Ortiz Decl. ¶ 32-33). As such, the Parties request that the Court appoint Rust Consulting as Claims Administrator in this case.

## IV.    CONCLUSION

For the foregoing reasons Plaintiffs respectfully request that the Court grant preliminary approval of the Collective Action Settlement and allow that Notice of the Settlement be mailed to Settlement Collective Members so they may make an informed choice about this settlement. A Proposed Order is enclosed for the Court's convenience.

Dated: December 16, 2024
    New York, New York

Respectfully submitted,

By:    s/Armando A Ortiz
        Joseph A. Fitapelli
        jiftapelli@fslawfirm.com
        Armando A. Ortiz
        aortiz@fslawfirm.com
        **Fitapelli & Schaffer, LLP**
        28 Liberty Street, 30th Floor
        New York, New York 10005
        (212) 300-0375 – Telephone
        (212) 481-1333 – Facsimile

        Melinda Arbuckle
        marbuckle@wageandhourfirm.com
        Ricardo J. Prieto
        rprieto@wageandhourfirm.com
        **Wage and Hour Firm**
        400 North Saint Paul Street, Suite 700
        Dallas, Texas 75201
        (214) 210-2100 – Telephone
        (469) 299-1070 – Facsimile

        ATTORNEYS FOR PLAINTIFF AND
        PUTATIVE COLLECTIVE ACTION MEMBERS

## CERTIFICATE OF CONFERRAL

    I hereby certify that I conferred with Defendants and they **do not oppose** this motion.

/s/ Armando A. Ortiz
Armando A. Ortiz

## CERTIFICATE OF SERVICE

    I certify that on the date above a true and correct copy of this document was filed with the Court using the CM/ECF filing system, which sent a copy to all counsel of record.

/s/ Armando A. Ortiz
Armando A. Ortiz